IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHELLE E. BRISKER,** | : | CIVIL ACTION |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN E. POTTER, et al.,** | : | |
| **Defendants** | : | NO. 06-4473 |

<u>**MEMORANDUM AND ORDER**</u>

P<small>RATTER</small>, J.                                                                             N<small>OVEMBER</small> 29, 2007

Plaintiff Michelle Brisker filed suit against her former employer, John E. Potter, Postmaster General of the United States Postal Service ("USPS"),[1] pursuant to pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, for damages arising out of her allegedly discriminatory discharge. The defense moves for summary judgment on the grounds that there is insufficient evidence in the record for a reasonable jury to find that USPS unlawfully discriminated against Ms. Brisker on the basis of race or gender, or that the proffered nondiscriminatory reason for Ms. Brisker's discharge is pretextual. Ms. Brisker opposes the Motion. As discussed more fully below, because there is insufficient evidence of pretext, the Court will grant the Motion.

**FACTUAL BACKGROUND**

The following facts are undisputed. Ms. Brisker, who is an African-American female, was assigned to the King of Prussia Post Office on April 18, 2005 as a Part Time Flexible employee. (Brisker Dep. 43-44; Kudach Dep. 6-8.) Like other new employees, Ms. Brisker was

---

[1] An action under Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, may properly be brought against the Postmaster General of the United States Postal Service. <u>Brown v. Gen. Servs. Admin.</u>, 425 U.S. 820, 835 (1976); <u>Owens v. United States</u>, 822 F.2d 408, 410 (3d Cir. 1987).

placed on probationary status until the completion of the standard 90-day probationary period, during which time new employees are evaluated every 30 days. (Id.) Prior to the completion of the probationary period, on June 25, 2007, Ms. Brisker was discharged. (Brisker Dep. 94.)

Ms. Brisker had previously worked for USPS for ten years, as both a carrier and as a clerk. (Brisker Dep. 25-41.) However, during that time, Ms. Brisker was never trained to sort the mail or prepare it for delivery. (Id.) In 2005, she was invited to interview for the position of Part Time Flexible employee in Norristown, and then was subsequently assigned to the King of Prussia office. (Id.) During the ten years she worked for USPS, Ms. Brisker never received an unsatisfactory review. (Brisker Dep. 43-46.) Despite this prior experience, Ms. Brisker was nonetheless required to complete the 90-day probationary period. (Id.)

Part Time Flexible employees are responsible for sorting ("casing"[2]) the mail and then delivering it. (Brisker Dep. 16.) Gerard Kudach was Ms. Brisker's immediate supervisor and was responsible for the decision to terminate her. (Kudach Dep. 5-6.) During the time Ms. Brisker was on probation, Mr. Kudach also supervised two other probationary employees, David Wehrli, who is a white male, and Janeeya Moultrie, who is an African-American female. (Brisker Dep. 19-21, 55, 56.) Ms. Moultrie passed the probationary period and became a permanent employee. (Kudach Dep. 62; Brisker Dep. 57.) Mr. Wehrli resigned due to an injury prior to the end of his probationary period. (Kudach Dep. 62.)

When she began work at the King of Prussia Post Office, Ms. Brisker was not given any formal training on casing or delivery. (Brisker Dep. 7-17.) During her first two days, Ms.

---

[2] "Casing" the mail entails sorting it by odd and even street numbers, and then putting it in sequential order to facilitate delivery. (Brisker Dep. 22-23.)

Brisker shadowed other carriers to observe them delivering the mail. (Brisker Dep. 12-14.) On her third day, Ms. Brisker attended driver's training. (Brisker Dep. 14-16.) Although she was certified, she was not trained on the "two-ton" truck. (Id.)[3] During the remainder of her first week on the job, Ms. Brisker assumed full responsibility for casing the mail, even though she had received no training in this respect, and then delivering it. (Brisker Dep. 16-19.) During that first week, she was assigned to different and unfamiliar routes each day. (Id.)

During her first few days on a given route, Ms. Brisker had difficulty delivering the mail in a timely manner, but once she became familiar with the route she did not have a problem. (Brisker Dep. 19, 60-62.) While it is not unusual for a carrier to be late on a new route, carriers typically become quicker with time. (Kudach Dep. 30.)[4] Accordingly, Mr. Kudach attempted to ensure that employees remained on one route for at least three or four days in order to determine whether they made any progress. (Id.) Route assignments, however, depend on the schedules of the career carriers (as opposed to probationary employees). (Id. at 31.) At least once, Ms. Brisker was "bumped" from a route because it was designated for a career carrier. (Id. at 32-33.) This caused her to be late because the change often meant she had to learn a new route. (Id.)

Mr. Kudach repeatedly informed Ms. Brisker that she was taking too long to deliver her routes. (Brisker Dep. 59.) John Casey, Mr. Kudach's supervisor and the station manager, also spoke to Ms. Brisker about her job performance. He told her that in order to keep her job, she

---

[3] Ms. Brisker does not know whether Mr. Wehrli received training with respect to sorting the mail or driving a two-ton truck. (Brisker Dep. 50-51.)

[4] The expectations for the timing of casing the mail vary depending on the "flow of mail." (Kudach Dep. 12.) However, the expected time for each route is fixed, and is posted on the carrier box for that route. (Kudach Dep. 12-13.)

would have to know five different routes, how to case them and how to pull down the mail, and that she would have to be on time. (Brisker Dep. 70-71.) Ms. Brisker does not state whether the other probationary employees were expected to meet these same standards.

In addition to the formal evaluations every 30 days, Ms. Brisker received evaluations as frequently as every two weeks, including her first two weeks on the job. (Brisker Dep. 57-60, 65-69.) Mainly these evaluations were verbal, but at least "three or four" times, they were in writing. (Kudach Dep. 20.) According to Mr. Kudach, these frequent "reviews" were necessary in order to note such deficiencies in Ms. Brisker's performance as delays in casing the mail, delays in delivering the mail, and the way Ms. Brisker dressed. (Brisker Dep. 67-68.) Mr. Kudach also documented various other performance deficiencies such as poor driving, driving up on a lawn, failing to properly scan items of mail, failing to record her route, and failing to properly swipe her time card. (Kudach Dep. 21, 37-45.) Ms. Brisker does not know how often Mr. Wehrli and Ms. Moultrie were evaluated. (Brisker Dep. 95.) According to Mr. Kudach, Mr. Wehrli was also notified of deficiencies both verbally and in writing outside of the 30-, 60- and 90-day reviews. (Kudach Dep. 24-25.)

On May 20, 2005, approximately one month after she began working at the King of Prussia Post Office, Ms. Brisker was formally evaluated and given an unsatisfactory rating for work performance. (Brisker Dep. 71; Ex. 3 to Brisker Dep.) On June 25, 2005, Mr. Kudach again formally evaluated Ms. Brisker as unsatisfactory in work performance, safety performance and driving performance. (Brisker Dep. 81, 82, Ex. 4 to Brisker Dep.) Ms. Brisker's Employee Evaluation and/or Probationary Report states: "Employee has not demonstrated on a daily basis the ability to meet the street or office expectations, or follow supervisors' instructions." (Brisker

4

Dep. 91; Ex. 5 to Brisker Dep.)  Ms. Brisker did not sign the evaluation.  (Id.)  In particular, the deficiencies in Ms. Brisker's safety performance, such as driving up on a lawn, were not acceptable.  (Kudach Dep. 57-61.)

On June 25, 2005, Ms. Brisker was given a notice of separation and effectively discharged.  (Brisker Dep. 94; Ex. 6 to Brisker Dep.)  According to Ms. Brisker, at the time of her discharge, Mr. Kudach told Ms. Brisker that it would be in her best interest to deliver mail in "[her] own neighborhood with [her] own kind," a remark which Ms. Brisker understood to refer to her race and the primarily white racial composition of King of Prussia.  (Brisker Dep. 97.)  Although Mr. Kudach denies having made this statement (Kudach Dep. 53), the defense does not dispute the content of the statement for the purposes of its Motion for Summary Judgment.  It is undisputed that prior to June 25, 2005, no racist remarks or comments were made around or to Ms. Brisker.  (Brisker Dep. 97.)

Despite having applied for many positions, Ms. Brisker has not worked since her discharge.  (Brisker Dep. 103-113.)  As a result of her discharge, Ms. Brisker's emotional and physical health has suffered.  (Id.)

**JURISDICTION**

The Court has jurisdiction over this suit pursuant to 28 U.S.C. §§ 1331 and 1343.

**LEGAL STANDARD**

**A.    Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

5

matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case," id. at 325, or offer affirmative evidence which demonstrates that the plaintiff cannot prove his case, Lawrence v. Nat'l Westminister Bank N.J., 98 F.3d 61, 69 (3d Cir. 1996). After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The evidence provided by the nonmovant is to be believed, and the Court must draw all reasonable and justifiable inferences in the nonmovant's favor. Anderson, 477 U.S. at 255. The Court of Appeals for the Third Circuit advises that "this standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." Stewart v. Rutgers, 120 F.3d 426, 431 (3d Cir. 1997). However, a nonmovant plaintiff cannot defeat a motion for summary judgment by merely restating the allegations of the complaint, but instead must "point to concrete evidence in the record that supports each and every essential element in his case." Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995) (citing Celotex,

477 U.S. at 322).

B.   **Discrimination on the Basis of Race or Sex Under Title VII**

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race . . . or . . . sex . . . " 42 U.S.C. § 2000e-2(a)(1). In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), "the Supreme Court created a special scheme for structuring the presentation of evidence in discriminatory treatment cases under [Title VII]." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997); see also McDonnell Douglas, 411 U.S. at 802-805. Under this burden-shifting framework, the plaintiff carries "the initial burden . . . of establishing a prima facie case of [unlawful] discrimination." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (quoting McDonnell Douglas, 411 U.S. at 802). "If the plaintiff succeeds, the burden of production shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the [adverse employment action].'" Id. (emphasis omitted). If the defendant meets its burden, the plaintiff must show by a preponderance of the evidence that the defendant's stated reason is pretext. Fuentes, 32 F.3d at 763. Despite the shifting intermediate evidentiary burdens, the plaintiff at all times carries the burden of persuading the factfinder that the defendant unlawfully discriminated against him or her. Tex. Dep't. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981) (citation omitted).

**DISCUSSION**

A.   **Prima Facie Case**

To establish a *prima facie* case of discrimination on the basis of race or sex under Title VII, a plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for the position she held, (3) she suffered an adverse employment action, and (4) similarly situated

persons outside of her protected class were treated more favorably, or the circumstances of the adverse employment action give rise to an inference of discrimination. Jones v. School Dist. of Phila., 198 F.3d 403, 410-11 (3d Cir. 1999). The Third Circuit has noted that "there is a low bar for establishing a *prima facie* case of employment discrimination." Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 539 (3d Cir 2006) (citations omitted).

Here, USPS asserts that Ms. Brisker cannot establish a *prima facie* case because she has failed to establish the second and fourth elements, that is, that Ms. Brisker was qualified for the job, and that similarly situated persons outside of her protected class were treated more favorably, or that the circumstances of her discharge give rise to an inference of discrimination. Jones, 198 F.3d at 410-11.[5]

### 1. Qualification

In reviewing qualifications for purposes of proving a *prima facie* case, the Court must look only to objective criteria, such as education and experience. Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d Cir. 1995) (citing Weldon v. Kraft, Inc., 896 F.2d 793, 798 (3d Cir.1990)).

USPS contends that Ms. Brisker was not qualified for her position because she was not able to sort or deliver the mail in a timely manner. However, the Third Circuit Court of Appeals has held that, under the McDonnell Douglas method of proof, "[i]nsubordination plainly is not something the plaintiff must disprove to succeed at the first level of proof, but rather it is more logically a defense that is raised at the second level to meet the plaintiff's prima facie case of discrimination." Jalil v. Avdel Corp., 873 F.2d 701, 707 (3d Cir. 1989). Likewise, Ms. Brisker

---

[5] It is undisputed, for purposes of this Motion, that Ms. Brisker, as an African-American female, is a member of a protected class with respect to both race and gender, and that she suffered an adverse employment action when she was terminated.

need not disprove or explain her alleged poor performance in order to establish that she was qualified for the position for the purposes of the *prima facie* case.  See Bellissimo v. Westinghouse Elec. Corp., 764 F.2d 175, 180 (3d Cir. 1985) (plaintiff was qualified for the job although she could not prove that the poor performance reasons given for her discharge were pretextual), overruled in part on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); Brown v. Parker-Hannifin Corp., 746 F.2d 1407, 1411 (10th Cir. 1984) (plaintiff was qualified for the job and established a *prima facie* case of discrimination even though defendant established that she had been insubordinate); cf. Pollock v. American Tele. & Tele. Long Lines, 794 F.2d 860, 863-64 (3d Cir. 1986) (insubordination, poor performance, and misconduct raised as legitimate, non-discriminatory reasons for employee discharge).

      Moreover, under an objective standard, the evidence indicates that Ms. Brisker was indeed qualified for the position.  Ms. Brisker had approximately ten years of experience working for USPS in various capacities, and while she did not have prior experience in sorting or delivering the mail, nothing indicates that this disqualified her the position.  Indeed, Ms. Brisker had never received an unsatisfactory performance review (Brisker Dep. 43-46), and USPS, which presumably was familiar with Ms. Brisker's work experience, *invited* Ms. Brisker to apply for the Part Time Flex position (id. at 25-41).  Thus, Ms. Brisker has met her burden of establishing that she was qualified for the position.  See Jalil, 873 F.2d at 707 (holding that "satisfactory performance of duties over a long period of time leading to a promotion clearly established [plaintiff's] qualifications for the job").

     USPS also contends that Ms. Brisker cannot meet the fourth prong of the *prima facie* case because she cannot establish that Mr. Kudach treated non-members of her protected class more

9

favorably, or that the circumstances of her discharge give rise to an inference of discrimination. Ms. Brisker counters that Mr. Kudach treated Ms. Moultrie and Mr. Wehrli more favorably, and that Mr. Kudach did not have any legitimate reason to terminate her.

### 2. Treatment of Similarly Situated Persons Not in the Protected Class

Ms. Brisker contends that Mr. Wehrli and Ms. Moultrie were similarly situated to Ms. Brisker as probationary employees supervised by Mr. Kudach, and that both were treated more favorably than she. To establish a valid comparator, the plaintiff must demonstrate that employees who were not members of the protected class engaged in "the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Boykin v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 411 (E.D. Pa. 2000). Ms. Moultrie is not a valid comparator because, as an African-American female, she is a member of Ms. Brisker's protected class with respect to both race and gender. Mr. Wehrli may be a valid comparator because, as a white male, he is not a member of plaintiff's protected class, and he had performance deficiencies. (See Kudach Dep. 24-25.)

Ms. Brisker alleges that Mr. Kudach treated Ms. Brisker less favorably than Mr. Wehrli in the following ways: (1) Ms. Brisker received less training than Mr. Wehrli; (2) Ms. Brisker received more difficult assignments than Mr. Wehrli; (3) Mr. Kudach delayed Ms. Brisker and thereby prevented her from completing her duties in a timely manner; and (4) Mr. Kudach terminated Ms. Brisker, but did not terminate Mr. Wehrli.

#### a. Training

Ms. Brisker contends that she did not receive any formal training on casing or delivery, and that she was not trained to drive a "two-ton" truck. Ms. Brisker generally claims that she

received less training that Mr. Wehrli, but her testimony shows that, for the most part, Ms. Brisker is unaware of the length and type of training Mr. Wehrli received. For example, Ms. Brisker does not know whether Mr. Wehrli received training with respect to sorting the mail or driving a two-ton truck. (Brisker Dep. 50-51.) Thus, the evidence in the record fails to show that Mr. Kudach treated Mr. Wehrli more favorably than Ms. Brisker with respect to training.

      **b.**      **Assignments**

According to Ms. Brisker, Mr. Wehrli also received easier assignments. Specifically, Mr. Wehrli allegedly spent his first month in an office building sorting mail without any delivery duties. (Brisker Dep. 50-51, 56.) However, Ms. Brisker does not state whether Mr. Wehrli was nevertheless held to same standards as to which Ms. Brisker was held with respect to the timing for casing and delivering certain quantities of mail, and knowledge of different routes. According to Mr. Kudach, it was standard practice to give probationary employees different routes, including any of the 33 routes covered by the King of Prussia Post Office. (Kudach Dep. 16-17.)

In addition, Ms. Brisker contends that she had to deliver "Acme mail" and "marriage mail," which presumably are high in bulk and take longer to deliver, in less time than the time given to others. (Brisker Dep. 78-79.) Although Mr. Kudach confirmed that as supervisor, he has discretion to tell the carriers how much mail to case and deliver, and how much to leave for the next day (Kudach Dep. 10-11), there is no evidence in the record that Mr. Wehrli received more time for this type of mail delivery (Brisker Dep. 79).

Thus, the evidence in the record fails to show that Mr. Kudach treated Mr. Wehrli more favorably than Ms. Brisker with respect to assignments.

### c. Mr. Kudach's Alleged Actions

Ms. Brisker asserts that Mr. Kudach was the primary reason she was frequently late in completing her duties. (Brisker Dep. 60-61, 77-78.) Specifically, she testified that he detained her in his office, gave her a new route each day, and either failed to assign her to a vehicle or assigned her to vehicles that did not work properly. (Brisker Dep. 60-66.) However, Ms. Brisker does not know if Mr. Wehrli also had to wait for access to a functional vehicle. (Brisker Dep. 65.)

In addition, Ms. Brisker alleges that Mr. Kudach evaluated her more frequently than Mr. Wehrli. However, Ms. Brisker does not know how often Mr. Wehrli was evaluated. (Brisker Dep. 95.) Mr. Kudach testified that he notified Mr. Wehrli of deficiencies both verbally and in writing outside of the 30-, 60- and 90-day reviews. (Kudach Dep. 24-25.)

Thus, the evidence in the record fails to show that Mr. Kudach treated Mr. Wehrli more favorably than Ms. Brisker with respect to evaluations and other discretionary actions.

### d. Ms. Brisker's Discharge

Ms. Brisker asserts that the mere fact that Mr. Wehrli was *not* terminated – and, more broadly, the fact that *no white males* were terminated – while on probation at the same time as Ms. Brisker is sufficient to raise an inference of discrimination. However, with respect to a decision to terminate or retain, Mr. Wehrli cannot be considered similarly situated because he resigned prior to the completion of his probation period.[6]

---

[6] Although Mr. Wehrli resigned due to an injury prior to the end of his probationary period, Mr. Kudach testified that Mr. Wehrli would have been terminated had he not resigned. (Kudach Dep. 62.) Specifically, Mr. Kudach testified that Mr. Wehrli was in the process of being discharged before he resigned. (Kudach Dep. 62-63.) However, Mr. Wehrli was not given any written documentation telling him that he was going to be terminated. (Kudach Dep. 63-65.)

### 3.     Circumstances of the Adverse Employment Action

The circumstances surrounding Ms. Brisker's discharge, viewed in the light most favorable to Ms. Brisker, may raise an inference of discrimination on the basis of race. According to Ms. Brisker, on June 25, 2005, the day of Ms. Brisker's discharge, Mr. Kudach told Ms. Brisker that it would be in her best interest to deliver mail in "[her] own neighborhood with [her] own kind," a remark which Ms. Brisker understood to refer to her race and the racial composition of King of Prussia.  (Brisker Dep. 97.)  Although Mr. Kudach denies having made this statement (Kudach Dep. 53), at a minimum, Ms. Brisker's testimony regarding the statement is sufficient to meet the low bar of the *prima facie* case with respect to discrimination on the basis of race.

Thus, the evidence in the record is sufficient to establish a *prima facie* case of race discrimination.  By contrast, the evidence is insufficient with respect to Ms. Brisker's gender discrimination claim.  However, even if Ms. Brisker could establish a *prima facie* case of discrimination on the basis of gender, there is insufficient evidence in the record to demonstrate that USPS's proffered reasons for her discharge were pretextual.

### B.     USPS's Proffered Non-discriminatory Reason for Ms. Brisker's Discharge

If the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to rebut the presumption of discrimination.  Burdine, 450 U.S. at 254.  The defendant's

---

While there is no evidence in the record other than Mr. Kudach's testimony demonstrating that Mr. Wehrli would have been discharged had he not resigned, there also is no evidence in the record – not even Ms. Brisker's own testimony – that Mr. Wehrli would *not* have been terminated.  (See Brisker Dep. 53-54.)  Ms. Brisker rests her argument on the assertion that the question of whether Mr. Wehrli would have been terminated is a disputed issue of fact, but this assertion is not borne out by the evidence in the record.

burden is "one of production, not persuasion; it 'can involve no credibility assessment.'"  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 142 (2000) (quoting <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 509 (1993)).  The defendant can satisfy its burden by presenting evidence sufficient to conclude that there was a nondiscriminatory reason for the plaintiff's discharge.  <u>Fuentes</u>, 32 F.3d at 763 (citing <u>Hicks</u>, 509 U.S. at 508).  Our Court of Appeals has described this burden as "relatively light," because the defendant need not prove that its tendered reason actually motivated its decision.  <u>Fuentes</u>, 32 F.3d at 763 (citing <u>Burdine</u>, 450 U.S. at 253).

USPS contends that the deficiencies in Ms. Brisker's work performance are a legitimate, non-discriminatory reason for her termination.  Specifically, Ms. Brisker did not complete her duties on time and drove unsafely.  (Kudach Dep. 24-35, 37-45; Brisker Dep. 60.)  While Ms. Brisker does not dispute that it occasionally took her a long time to deliver the mail, she asserts that Mr. Kudach made it virtually impossible for her to complete her routes on time by delaying her at the office, failing to provide her with a vehicle, assigning her to vehicles that did not work properly, and assigning her to at least ten different routes even though she was only required to know five.  (Brisker Dep. 86-91, 57-66.)

Although the reasons for Ms. Brisker's performance deficiencies are disputed, it remains undisputed that she frequently failed to complete her routes on time.  Moreover, Mr. Kudach also cited safety performance deficiencies, such as poor driving.  (Kudach Dep. 37-45.)  Thus, USPS has satisfied its burden of producing evidence of a legitimate, non-discriminatory reason for Ms. Brisker's discharge.  See <u>St. Mary's Honor Ctr.</u>, 509 U.S. at 508 (holding that the employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision);

14

Healy v. New York Life Ins. Co., 860 F.2d 1209, 1214 (3d Cir. 1988) (recognizing poor performance as a legitimate business reason for termination); Bellissimo, 764 F.2d at 181 (inability to get along with supervisor is legitimate reason for discharge), overruled in part on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).

**C.      Evidence of Pretext**

If the defendant has established a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff must adduce evidence that "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication or . . . infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes, 32 F.3d at 762. Thus, the plaintiff must *either* (1) discredit the proffered reasons, *or* (2) adduce evidence that discrimination was more likely than not a motivating or determinative cause. Id. at 764.

To discredit the employer's proffered reason, the plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a fact finder could rationally find them 'unworthy or credence,' and hence infer 'that the employer did not act for [the asserted] nondiscriminatory reasons.'" Id. at 764-65 (citations omitted). Ms. Brisker cannot satisfy this burden merely by relying on a showing that Mr. Kudach's decision was "wrong or mistaken," because the focus is on "whether discriminatory animus motived the employer, not whether the employer is wise, shrewd, prudent or competent." Id. at 765 (citations omitted).

USPS proffers two legitimate, non-discriminatory reasons for Ms. Brisker's discharge: (1) Ms. Brisker's inability to complete her casing and delivery duties in a timely manner, and (2) Ms.

15

Brisker's poor driving and unsatisfactory safety performance evaluations.

Ms. Brisker does not deny that she had trouble completing her duties on time. Rather, she contends that her tardiness was the result of discriminatory conduct on the part of Mr. Kudach. Specifically, as discussed above, Ms. Brisker asserts that the training she received was inadequate to enable her to do her job properly; that she received more difficult assignments, such as constantly changing routes, numerous different routes and larger quantities of mail; and that Mr. Kudach made her late by detaining her in the office or limiting her access to functioning vehicles. As evidence that Mr. Kudach's motives were discriminatory, Ms. Brisker points to the purportedly racist comment made by Mr. Kudach when her terminated her.

Even assuming the truth of these allegations, the evidence in the record is insufficient to "conclude that each reason was a fabrication or . . . infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." See Fuentes, 32 F.3d at 765. For example, nothing in the record indicates that being assigned to numerous different routes is unusual for a probationary employee, particularly since career carriers can choose their routes and thereby "bump" a probationary employee off the route to which he or she was assigned. (Kudach Dep. 15, 31.) In addition, Ms. Brisker testified that Ms. Moultrie, an African-American female, was trained on casing the mail and received the same types of assignments as Ms. Brisker. (Brisker Dep. 51, 57.) This belies Ms. Brisker's assertion that her lack of training was motivated by discrimination. Finally, there is evidence that Mr. Kudach took measures to help Ms. Brisker succeed. For example, because Ms. Brisker was having trouble, Mr. Kudach assigned Tony LaScala, a seasoned career carrier, to help her. (Kudach Dep. 19, 49; Brisker Dep. 71-73.)

With respect to Ms. Brisker's deficiencies in safety performance and other performance deficiencies, the pretext argument is even weaker. For example, an evaluation dated May 25, 2005 signed by Mr. Casey, who is *not* accused of discrimination, states that Ms. Brisker was observed "dismounting at curbside boxes" and not wearing the proper seatbelt. (Def. Reply Ex. B.) An evaluation written two days later by Mr. Kudach states that Ms. Brisker "pulled up on customer's lawn instead of the driveway to deliver a parcel," that Ms. Brisker "caus[ed] a potential safety hazard," and that her hazard lights were not engaged. (Def. Reply Ex. C.) In other evaluations, Mr. Kudach also noted Ms. Brisker's failure to follow instructions and failure to scan bar codes (Def. Reply Ex. D), her failure to properly record her time (Def. Reply Ex. E), her failure to properly document her activities (Def. Reply Ex. F), her failure to properly fill out her vehicle card (Def. Reply Ex. G), and her misdelivery of mail (Def. Reply Ex. H). Ms. Brisker has adduced no evidence disputing these safety and work performance deficiencies, or otherwise attributing these negative evaluations to discriminatory motives.

Mr. Kudach's allegedly racist comment is the only evidentiary fact in the record that indicates racial animus. However, even when viewing this comment in the light most favorable to Ms. Brisker's position, as the Court must in the context of summary judgment, the evidence as a whole is insufficient to demonstrate pretext. Given the extensive and mostly uncontested evidence of Ms. Brisker's performance deficiencies, and the fact that another African-American female employee successfully passed her probation during the same time period, such an isolated comment alone is not enough to demonstrate that Ms. Brisker's unsatisfactory work and safety performance was fabricated, or that discrimination was a determinative cause of Ms. Brisker's discharge. See Grigsby v. Kane, No. 99-2083, 2005 WL 348303, at *16 (M.D. Pa. Feb. 2, 2005)

(holding that uncorroborated allegedly racist comment, even in conjunction with some evidence of disparate treatment, does not "surpass the sufficiency threshold" for a factfinder to infer that racial discrimination was a determinative factor for plaintiff's termination).

It may be that Mr. Kudach was overly tough on Ms. Brisker with respect to her assignments and/or his expectations.  But without more evidence of discriminatory animus, such workplace friction will not sustain a Title VII claim.  See Fuentes, 32 F.3d at 765 (holding that a plaintiff cannot satisfy his burden merely by relying on a showing that "the employer's decision was wrong or mistaken," because the focus is on "whether discriminatory animus motived the employer, not whether the employer is wise, shrewd, prudent or competent"); Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991) (plaintiff's "view of his performance is not at issue; what matters is the perception of the decisionmaker"), overruled in part on other grounds, St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993).[7]  Moreover, any suspicion of discriminatory animus raised by Mr. Kudach's comment is offset by his concededly fair treatment of Ms. Moultrie.  See Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex, 477 U.S. at 325) (non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions to defeat a summary judgment motion).

---

[7] See also Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 528 (3d Cir. 1992) (holding that pretext is not established by virtue of the fact that an employee has received some favorable comments in some categories or has, in the past, received some good evaluations); Simpson v. Kay Jewelers, Division of Sterling, Inc., 142 F.3d 639, 647 (3d Cir. 1998) (An employee's positive performance in another category is not relevant, and neither is the employee's judgment as to the importance of the stated criterion); Hicks v. Arthur, 878 F. Supp. 737, 739 (E.D. Pa. 1995) (that a decision is ill-formed or ill-considered does not make it pretextual), aff'd, 72 F.3d 122 (3d Cir. 1995); Seibel v. Marketplace Direct, Inc., No. 05-684, 2007 WL 788384, *4 (W.D. Pa. Mar. 13, 2007) (holding that plaintiff's contention that he was unfairly blamed for his deficiencies does not establish pretext).

**CONCLUSION**

Although Ms. Brisker has adduced sufficient evidence to state a *prima facie* claim of race and gender discrimination, there is insufficient evidence in the record to carry her burden of demonstrating that the proffered reasons for her discharge are pretextual.  The only evidence of racial animus is Mr. Kudach's allegedly racist comment, and there is no evidence of animus toward women.  With respect to racial animus, Mr. Kudach's alleged comment is counterbalanced by the fact that another African-American female employee passed her probation period and was hired as a permanent employee, and by the extensive evidence of Ms. Brisker's performance deficiencies.  Moreover, Ms. Brisker does not even attempt to attribute her unsatisfactory safety performance to discriminatory conduct on the part of Mr. Kudach.  An employer is entitled to judgment as a matter of law "if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination occurred."  <u>Reeves</u>, 530 U.S. at 148.

Thus, even when viewed in the light most favorable to Ms. Brisker, the evidence does not support a conclusion that the proffered reasons were fabricated, or an inference that discrimination was more likely than not a motivating cause of Ms. Brisker's discharge.  Accordingly, the Court will grant summary judgment in favor of the Defendant.  An Order consistent with this Memorandum follows.

BY THE COURT:

<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHELLE E. BRISKER,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **JOHN E. POTTER,** | : | |
| Defendant | : | NO. 06-4473 |

## ORDER

AND NOW, this 29th day of November, 2007, upon consideration of the Defendant's Motion for Summary Judgment (Docket No. 21), the Plaintiff's response thereto (Docket No. 22), and the Defendant's reply (Docket No. 23), it is hereby ORDERED that the Motion is GRANTED.

The Clerk of the Court is instructed enter judgment in favor of Defendant John E. Potter and to CLOSE this case for all purposes, including statistics.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge